HEARD NOVEMBER TERM, 1876.

## WEST *vs.* CAUTHEN.

A testatrix, who died in 1859, bequeathed one-twelfth of her estate to her daughter, a married woman, "for her sole and separate use, and it is not to be subjected to the debts or contracts of any person else." The executor, under a power to sell, given by the will, sold the property and collected the proceeds, without fault on his part, in Confederate currency. He made some payments to the married woman; invested part of the funds in interest-bearing bonds of the Confederate States, and retained the rest until the close of the war, when the whole, bonds and currency, became worthless in his hands. The legatee died April 5, 1874: *Held,* That the executor was not liable to account to the administrator of the legatee for the fund thus lost in his hands.

The executor of a testator, who died in 1859, giving to his daughter, a married woman, a legacy "for her sole and separate use," not to be subject "to the debts or contracts of any one else," could not lawfully pay the *corpus* of the legacy to the daughter during coverture, but could only pay the same to a trustee legally appointed.

An executor *held* not to be liable to account for a fund which he rightfully received during the war in Confederate currency, part of which he invested in Confederate interest-bearing bonds, and the other part of which he retained until the close of the war, there being no one to whom he could rightfully pay over the fund, until it became worthless in his hands.

BEFORE MACKEY, J., AT LANCASTER; MAY, 1876.

This was an action by Eli West, as administrator of Milly West, deceased, against Thomas J. Cauthen, as executor of Rebecca Truesdel, deceased.

The case is fully stated in the following judgments of the Probate Judge of Lancaster County, and of His Honor the Circuit Judge.

The decree of the Judge of Probate is as follows:

In the Fall of 1859 Rebecca Truesdel died, leaving of full force and effect her last will and testament. In her will she bequeathed to Mrs. Milly West one-twelfth of her estate. That Thomas J. Cauthen was appointed executor of Mrs. Truesdel, acting under the will. The executor sold the property in 1860. The payments were made in notes, with twelve months' credit. None of the notes were collected until 1862 and 1863. All of the money received by executor was in Confederate currency. The executor, on the day of the sale, let Mrs. West have $191 in property. This is all, except $75, that there is any evidence of having been paid Mrs. West by the executor. It seems that the statement of Mr. Cauthen is that he acted as trustee for Mrs. West, as she was a married woman, and to prevent the marital rights of her husband, Eli West, from attaching to the property, which, by the will, was left to her sole and separate use. Mr. Cauthen also said that, by the advice of the then Commissioner in Equity, he was to retain the money of Mrs. West until the Court would again convene and until there was a trustee appointed. Eli West, husband and administrator of Milly West, brings suit to recover the balance due on the claim. It is my opinion—

1. That where the property was left to Mrs. West, a married woman, the executor of the will of her mother is not thereby made a trustee of her share. It would have been his place to have paid it over to Mrs. West and to have taken security. Where there is no trustee of the separate estate of a wife, the husband should act.

2. That, if he had acted as trustee, as he claimed, he was entitled to pay only the interest of the trust estate to Mrs. West; whereas he paid near $200 before any interest could have accrued, and did not pay the interest yearly as it fell due, having paid in the year 1863 $75, all of which payment, with interest thereon until the date of the settlement, would amount to the sum of $300, which was far more than the interest on the funds of the trust estate.

3. That the property was sold, and the funds were all in Confederate currency; that the notes paid to the estate and all the debts due by the estate were paid in Confederate notes, to which

no objections were made by any of the parties in interest. All the funds that came into the executor's hands were in Confederate currency, and his objections to pay it out was incurred so as to entitle him to the benefits of the Corbin Bill.

4. That at the time of the settlement, which was in the year 1863, the executor was still owing and due the legatee, Mrs. West, the sum of $468, which she at that time, or during that year, demanded of the executor.

It is adjudged that Thomas L. Cauthen, executor, was indebted to Mrs. West, as legatee under the will of Rebecca Truesdel, on the 1st day of January, 1863, in the sum of $468, which, after being scaled in accordance with Section first of the fifty-fifth Chapter of the Revised Statutes of the State, amount to two hundred and three 48-100 dollars, with interest thereon from the 1st day of January, 1863, to this date, amounting, in the aggregate, to the sum of three hundred and eighty-eight 86 100 dollars, which said amount it is decreed that the defendant shall pay to the plaintiff, together with the costs of this action.

The plaintiff appealed to the Court of Common Pleas on the following grounds:

1. Because the legacy to the plaintiff's intestate, which is the subject of this suit, having been paid to defendant in Confederate currency notes, and bequeathed to the sole and separate use of the legatee, a married woman, so that he could not pay out to her the principal thereof, and the investments thereof having been such as were usual and considered prudent at that time, and the same having perished in the hands of defendant, by reason of the results of the late war between the States, without fault on his part, he was not liable for the same, and the decree should have been for defendant.

2. Because, if liable at all for the value of the balance of Confederate currency, or investments in his hands, as found by the Probate Judge, the balance should have been estimated according to its value in the Spring of 1864, instead of January, 1863, as decided by the Probate Judge, because the testimony shows that the balance, adopted by him as the basis of his decree, was made up at the former date, and included interest to that date, and the decree should have been accordingly.

3. Because, if not made up in the Spring of 1864, the said balance should have been struck and its said value estimated as of the 1st day of January, 1864, the proof being that the fund was received in the latter part of 1862 and the early part of 1863, and that there were debts of considerable amount due by the estate, and the defendant, as executor, was not chargeable with the balance until the end of the year 1863, and the decree should have been accordingly.

4. Because the decree is in other respects erroneous.

After the hearing of the appeal, His Honor Judge T. J. Mackey entered the following decree:

MACKEY, J. This case comes before me on appeal by the defendant from the decree of the Probate Judge of Lancaster County. The argument herein was submitted to me in writing by the solicitor for the appellant, J. B. Kershaw, Esq., and by the solicitors for the respondent, Messrs. Wm. D. Trantham and J. T. Hay. After due consideration of the pleadings and the testimony, and the argument submitted thereon, I find as the issues of fact the following:

1. That in the Fall of 1859, Rebecca Truesdel, the testatrix of the defendant herein, died, leaving him, the said Thomas J. Cauthen, executor of her last will and testament, and that he duly qualified and acted as sole executor under the will of the said testatrix.

2. That the third clause of the said will is in the following words, to wit:

"It is my will and desire that all the balance of my property, both personal and real, that I may die possessed of, be sold by my executor, and the proceeds thereof, together with all notes, accounts and everything else of value that I may die possessed of, be equally divided betwixt my surviving children and the children of my deceased children; that is to say: one-twelfth to my son James R. Truesdel; one-twelfth to my daughter Elvira Cauthen; one-twelfth to my daughter Jane Cauthen; one-twelfth to my daughter Mahaley Fletcher; one-twelfth to my daughter Matilda Horton; one-twelfth to my daughter Polly Williams; one-twelfth to my daughter Thirza Ingram; one-twelfth to the children of my deceased son John Truesdel; one-twelfth to the children of my deceased son Henry Truesdel; one twelfth to the children of my deceased son George

H. Truesdel; and one-twelfth to the children of my daughter Sarah Jones; and one-twelfth to my daughter Milly West. This, the one-twelfth of my estate, I give to my daughter Milly West, for her sole and separate use, and it is not to be subjected to the debts or contracts of any person else."

3. That, pursuant to the above cited clause of the will, the executor, Thomas J. Cauthen, did 'sell all the property, both personal and real, belonging to the estate of his testatrix, and that the sale thereof took place on the 26th day of October, 1860.

4. That the executor, Thomas J. Cauthen, the defendant, appellant in this case, realized on said sale and collected on the notes and accounts due the estate of his testatrix the sum of dollars, in the currency of the Confederate States, the whole of which sum was received by him at sundry times between the 26th day of October, 1860, and the 1st day of January, 1863, up to which last named date (January 1st, 1863,) the said executor had received of the funds subject to distribution under the third clause of the will, after discharging all debts and liabilities of the estate, the sum of nine thousand two hundred dollars ($9,200).

5. That the distributive share to which the legatee, Milly West, was entitled under the will was seven hundred and sixty-six 66⅔-100 ($766.66⅔) dollars, being one-twelfth of the net proceeds of sales and collections, etc., etc.

6. That although the legatee made frequent demands upon the executor for her distributive share of the estate of the said testatrix pursuant to the terms of the will, the said executor failed and refused to pay to her the said distributive share of one-twelfth, but, as is shown by his own admission, is still indebted to her administrator, the plaintiff, respondent herein, in the sum of four hundred and sixty-eight dollars ($468) on account of the said distributive share.

7. That the aforementioned sum of four hundred and sixty-eight dollars, Confederate currency, was in the hands of the said executor, the defendant, appellant, and applicable to the payment of the balance due the said legatee, Milly West, on the first of January, 1863, and that no part thereof had been paid to the said legatee up to the time of her death, on the 5th day of April, 1874.

Having thus recited in brief my finding as to the material facts of this case, it is proper for me to consider, before determining the issue of law involved, the special ground upon which the defendant, appellant, claims to be exempt from present liability at law or in

equity for the payment of the sum of $468 found to be due the legatee, Milly West, at the date of her decease, as the balance unpaid of her distributive share under the will of the defendant's testatrix, Rebecca Truesdel.

That ground is embodied in paragraph 7 of defendant's answer, wherein it is alleged " that the said Milly West was the wife of the plaintiff, Eli West, and he was an insolvent, thriftless man, and the testatrix for that reason was unwilling that the said legacy should be paid over and become subject to the marital rights of the said plaintiff; and she therefore bequeathed the same to the *sole and separate use* of the said Milly West, which she did not in regard to the legacies given to her other married daughters; and for this reason, under the direction of the then Ordinary for Lancaster District, defendant did not pay over to the said Milly West any more of the said legacy, nor did she desire that the same should be paid over to her; and defendant submits that under the terms of the will he became a trustee to preserve the said legacy from attaching to the marital rights of the plaintiff."

The defendant also alleges in his said answer that the entire sum received by him on account of the estate of his testatrix was in Confederate currency notes, and that he paid out, in due course of administration, as much of the said notes as he could, and funded the balance (except some four or five hundred dollars) in Confederate bonds, and that he has still in his hands the said currency notes, and that both the Confederate bonds and notes have become worthless without fault of defendant.

It is sufficient to observe here, in reference to the averments contained in the foregoing extract from the answer of the defendant, that his allegations that the legatee, Milly West, did not desire the residue of the legacy due her paid over to her is overwhelmingly refuted by the evidence. On the contrary, it is conclusively shown by the testimony of unimpeached witnesses that the legatee, Milly West, was in needy circumstances, and that she persistently importuned the said defendant to pay over to her the balance due on her distributive share of her mother's estate; nor was her indigence alleviated in any degree by the fact, as alleged by the defendant, that her husband " was an insolvent and thriftless man."

The defendant furnishes no proof in support of his statement that he invested the greater portion of the funds belonging to the estate in Confederate bonds; and the force of his statement, as a credible

allegation, is greatly impaired by his omission to specify, even approximately, the amount of currency so invested, or the rate at which such bonds were purchased, the rate of interest that they bore, or when, where or from whom he purchased them.

Nor is any testimony adduced to show, as stated by defendant, that he was "directed" to make such investment by the Ordinary of Lancaster District; while the defendant alleges in his answer that he acted in the premises "under the direction of the Ordinary," he states, in his sworn testimony, that he "was advised by the Ordinary."

The Ordinary of Lancaster District could express no judgment in the matter of the withholding, by the executor, of the payments due the legatee, Milly West, or the investment of her funds in Confederate bonds, by virtue of the executor's alleged authority and duty as a trustee under the will, for the jurisdiction and judgment of the said Ordinary were never invoked in a case involving any such issue by this executor or any of the parties in interest.

Having thus duly considered the facts in this case as they appear in the testimony, and having stated my finding as to such facts as are material to the issue here involved, I now proceed to consider and determine the question of law arising thereon.

The fiduciary character of an executor as such does not vest him with the powers or impose upon him the duties of a trustee. The trusteeship of an executor consists wholly in the execution of implied trusts, unless he be distinctly charged by the testator with the execution of an express trust plainly appearing in the terms of the will.

The trusts of the executor in the case now under consideration were limited by the terms of the third clause of the will to the sale of the property, real and personal, of the testatrix; the collection of notes and accounts due to her estate; the liquidation of lawful debts due by her estate, and the payment of the legacies as provided for in her last will and testament. After making payment of the debts of the estate, it was the bounden duty of the executor to apply the funds in his hands to the payment of the legacies, in which fund the legatee, Milly West, had an absolute, legal and equitable fee to the amount of one-twelfth thereof. When the executor invested the ascertained distributive share of the said legatee in bonds, as alleged by him, he committed a *devastavit* as to her.— *Vide* Williams on Executors, Vol. 2, p. 1630; Bacon's Abr.

Executors, 50. The trust with which this executor was charged was purely an executed trust; that is, it was a trust created by the will, so clear and certain in all its terms and limitations that the executor had nothing to do but to carry out the provisions of the instrument according to its letter.— *Wright* vs. *Pearson*, 1 Eden Ch. Rep., 125; *Austin* vs. *Taylor*, 1 Edwards' N. Y. Ch., 367; Perry on Trusts, 328.

By the express terms of the will the powers of this executor were limited to the two-fold function of selling the estate and dividing the proceeds thereof equally between the surviving children of the testatrix, Rebecca Truesdel, and the children of her deceased children, in the proportion of one-twelfth to each legatee or class of legatees. The words "sole and separate use," annexed to the paragraph in which the distributive share of Milly West is designated, were not intended to qualify her absolute right to one-twelfth of the proceeds of the estate sale, after the payment of the debts of testatrix, but were designed as a safeguard to protect that right from invasion by its being subjected, without the consent of the legatee, to the debts or control of her husband. The legacy being for the benefit of the wife, exclusive of all other persons, and no remainder over, created a separate estate in her.—*Nix* vs. *Bradley*, 6 Rich. Eq., 48; *Barton* vs. *Bricoe*, Jacobs Ch. R., 603.

The interposition of a trustee was not necessary to carry out the intent of the testatrix, or, if necessary, the husband would have been construed to take the legal title to the legacy in trust for the wife, and could have been compelled to act accordingly.—*Parker* vs. *Brooke*, 9 Ves., 583; *Lee* vs. *Prideaux*, 3 Brown's Ch. R., 583.

But in this Court it was no part of the duty of executor to consider the marital relations of the legatee, Milly West; this was a matter entirely foreign to his functions. For aught that appeared in the terms of the will she was a *femme sole*. His whole duty would have been performed as to this legatee by the payment into her hand of one-twelfth of the clear fund of the estate. Her receipt for that amount would have been a good and unquestionable discharge for the executor from all future liability therein.—Wms. on Ex., vol. 2, 1279; *Pritchard* vs. *Ames*, 1 Turner & Russell's Ch. R., 222.

The executor thus having taken upon himself to act in regard to the legacy in question otherwise than was required by his trust, he

is liable for all losses that may thereby have accrued to the legatee.—2 Wms. on Ex., 1670; *Piely* vs. *Stace*, 4 Ves., 622.

His withholding payment of this legacy and investing the fund applicable thereto in Confederate bonds, not only without the consent of the legatee, but in the face of her reiterated demand for payment, and in view of her known indigence, was a flagrant breach of his trust on the part of this executor; and, indeed, his entire action herein, as disclosed by the testimony, bears upon its face all the features that may define a fraud.

If an executor or trustee commits a breach of the *trust* or *acts* beyond the *line of his duty*, and an inevitable calamity destroys the property, he must account for it, and is liable for all losses.— *Caffrey* vs. *Darbney*, 6 Ves., 496; *Fyler* vs. *Fyler*, Beav., 568; *Cocker* vs. ———, 1 Ryan & Moody's N. P. R., 535; *Kellaway* vs. *Johnson*, 5 Beav. Ch. R., 324.

The ground taken in the eighth clause of defendant's answer is without merit, and does not appear to have been insisted upon, as no evidence, either record or otherwise, was offered in its support. On the contrary, the proof is that the said Milly West was not a party to the suit brought by the legatee, Thirza Ingram, in 1866, in the Court of Equity for Lancaster District, against this defendant, as the executor of Rebecca Truesdel; if she were, the suit has abated by her death, and is itself dead as to her, on the absence of a bill of revivor, and her administrator is estopped by this proceeding from being a party plaintiff to such bill.

In the view that I have taken, in the exercise of my best judgment as to the law and the facts determinative of the issues involved in this case, I have not deemed it requisite to consider in detail the authorities voluminously cited by the learned solicitors for appellant and respondent, who have argued this cause with signal ability and great wealth of research.

Having duly considered and determined the issues herein, I do hereby affirm the decree of the Probate Judge of Lancaster County, and, in pursuance thereof, do adjudge and decree, and it is hereby adjudged and decreed, that the defendant appellant, Thomas J. Cauthen, executor of Rebecca Truesdel, do pay unto Eli West, as administrator of the estate of Milly West, the sum of three hundred and eighty-eight and 86-100 dollars, ($388.86,) the same being the estimated value in lawful money of the amount of four hundred and sixty-eight dollars ($468) Confederate currency, (Gen.

Stat., § 1, Ch. LV,) with interest from the 1st day of January, 1863, as adjudged in the said decree, together with all the costs of this action, and that execution do forthwith issue for the same.

The defendant excepted and appealed to this Court on the following grounds:

1. The facts, as stated by the Probate Judge, are not warranted by the testimony, and especially in this, that the evidence tends to show that the money with which defendant is charged was received by him partly in 1862 and partly in 1863: whereas His Honor has stated the fact to be that the same was in his hands on the first day of January, 1863, and has charged him with interest from that time.

2. In this also, that the evidence tends to show that the balance found to be due by the defendant was ascertained in the Spring of the year 1864, upon an accounting before the Ordinary, and included interest to that time, whereas His Honor has ·taken the balance as of January 1st, 1863.

3. In this also, that there was evidence tending to show that the defendant did fund or invest in Confederate States bonds, in 1864, all that he then had on hand, being the old issue of Confederate currency notes, and furnished the means of ascertaining approxi-·mately the amount and an excuse for the want of greater accuracy; whereas His Honor finds that no such proof was furnished, and the want of particulars (fully accounted for) threw suspicion upon the defense.

4. Because the defendant could not lawfully pay to the plaintiff's intestate more than the interest on her share of the estate, and having paid her more than the amount of interest due her, and, having lost the principal without fault on his part, he is not liable to plaintiff for anything.

5. Because, if liable at all, he is only chargeable with the value of four hundred and sixty-eight 66-100 dollars in Confederate money, to be scaled as of January 1st, 1864, or the Spring of 1864.

6. Because the money collected by defendant was received in 1862 and 1863, and none until after 1861, and it was error to charge him with the value of Confederate notes as of January 1st, 1863, as was done by the decrees.

*Kershaw*, for appellant:

1. Was the legacy to Milly West—"to her sole and separate use"—couched in such language as created a separate estate in her, distinct from her husband?

*a.* Any words are sufficient to create such an estate that indicate an intention to give to the wife and exclude the husband.—*Ballard* vs. *Taylor,* 4 DeS., 551.

*b.* Nor is any trustee necessary to be named to create such estate.—*Franklin* vs. *Crayon,* Harp. Eq., 250.

*c.* The executor is bound to execute the trust.—*Ashe* vs. *Ashe,* Rich. Eq. Ca., 383.

2. Being the trustee of such an estate, could the executor pay over the fund to the *cestui que trust?*

*a.* The wife, in this State, (contrary to the rule in England,) could neither charge nor dispose of her separate estate without the consent of the Court.—*Ewing* vs. *Smith,* 3 DeS., 462.

*b.* Where there was a bequest to the "sole and separate use of the wife," etc., and it was added that the wife's receipt alone should be considered as a sufficient discharge to the executors, the Court would not order the money paid to the husband upon the joint application of husband and wife, though he offered security for the forthcoming of the capital.—*Robinson* vs. *Dart,* Dud. Eq., 130.

This case explodes the notion that the husband in such case is entitled to the fund as *trustee* for the wife.

The wife, in this case, tendered her "separate receipt." If the Court would not order the payment of the fund when such separate receipt was declared by the will a sufficient discharge to the executors, how can it be contended here that the executor should have paid over this fund upon his own responsibility without any declaration of the will of the sufficiency of the wife's receipt?

*c.* Equally conclusive is the case of *Ex parte* Hunter, Rice's Eq., 293.

It declares as a rule, which the Court would not "knowingly depart from," that the husband should never be introduced into the execution of a trust for the wife.

3. Being then compelled to hold the fund, is the appellant to be made liable for investing in Confederate bonds?

*a.* The sale notes became due during the war, and were collected in Confederate currency, of the old issue. By the laws of the Confederacy, if he held the money, it would be reduced in value thirty-three and one-third per cent. He acted for the best, and will not

be held liable.—*Martin* vs. *Smith,* 1 DeS., 123; *Boggs* vs. *Adger,* 4 Rich. Eq., 408; *Manning* vs. *Manning,* 13 Rich. Eq., 410; *Haile* vs. *Shannon,* 15 Rich. Eq.; *McClure* vs. *Steele,* 14 Rich. Eq., 113; *McPherson* vs. *Gray,* 14 Rich. Eq., 121; *Whitlock* vs. *Whitlock,* 13 Rich. Eq., 170; *Thorrington* vs. *Smith,* 8 Wall., 14; *Head* vs. *Talley,* U. S. Sup. Court, Am. Law Times, 155; *Smith* vs. *Prothro,* 2 S. C., 373; *Hinton* vs. *Kennedy,* 3 S. C., 490.

The legatees were willing to receive Confederate currency, and it is not now objected that the executor ought not to have received it.

4. If liable at all, for what would he be liable?

*a.* The funds were collected in 1862 and 1863, the greater part in the latter year. There were debts to be paid, and the money was not wrongfully withheld. No balance was ever stated against him until the Spring of 1864. The value ought to be ascertained as of that date; certainly not before January 1st, 1864.—*Walter* vs. *Creswell,* 4 S. C., 359; *Pettus* vs. *Clawson,* 4 Rich. Eq., 92; *Wright* vs. *Wright,* 2 McC. Ch., 185.

*Trantham, Hay,* contra:

1. The findings of the Probate and Circuit Courts as to the amount due Milly West, the respondent's intestate, and as to the date from which the executor should be charged with the balance due her, together with interest, are amply supported by the evidence. The testimony of the respondent is that the sum of sixty ($60) dollars was paid to Milly West in 1861 by appellant as interest due to that date upon her share of her mother's estate; and sixty dollars, at the rate of seven per cent. per annum, is the interest upon the sum of eight hundred and fifty-seven and 14-100 ($857.14) dollars. This statement was not contradicted by appellant.

Again, the appellant testifies that he collected the funds of the estate in the latter part of 1862 and the first of 1863. But as he paid interest on a large sum of money to Milly West prior to January 1st, 1863, and as it appears from his own evidence that he settled the debts of the estate, paid the other legatees, and invested the funds remaining in his hands in bonds of the Confederate States of America during the year 1863, the Courts below, acting as juries, were justified in the conclusion, deduced from the whole evidence, that the balance due Milly West, together with interest, should be charged against him from the 1st of January, 1863. The appellant

cannot claim that the balance should be struck and interest charged against him from the 1st of January or the Spring of 1864, when, by his own admission, it appears that the funds of the estate were not only in his hands during the latter part of 1862 and the first of 1863, but were actually paid out by him during the year 1863, in liquidation of claims against the estate and in the settlement of legacies due the other heirs, or were invested in Confederate bonds. The inference is reasonable that an executor would not pay interest upon funds not in his hands, liquidate debts of the estate, pay legacies or invest the remainder in any securities whatever, when the proceeds of the estate were not yet in his possession.

The Courts below were compelled to make up their verdicts from a review of the whole mass of conflicting and frequently indefinite evidence introduced at the trial, and this Court will not disturb their finding in matters of fact, unless it should appear that some gross and palpable error has been committed.

2. The statement of the appellant that he did invest the amount due Milly West in Confederate bonds was unsupported by any evidence sufficient to satisfy a Court of justice that such an invest-ment was in fact made. No evidence was offered as to the denomi-nation of the bonds, from whom purchased, at what time and in whose name they were issued, or what amount of money was so in-vested; and it is submitted that such vague allegations, made by one supposed to be entirely conversant with that concerning which he testifies, are not sufficient to carry with them the conviction of their truthfulness.

3. The appellant had no right to hold the funds due Milly West any longer than was necessary to enable him to settle the estate; much less was he authorized, even admitting that he did so, to in-vest the same in Confederate bonds or any other kind of security. He was not a trustee for any other purpose than to sell the estate, settle the debts and divide the remainder among the legatees. His duty was, as soon as possible, to pay over Milly West's share to her or her husband and take their receipts for the same.

A trust must either be created in express terms or be inferred from the nature of certain duties imposed. The will of Rebecca Truesdel did not in words appoint the appellant a trustee for Milly West. Was that character imposed upon him by any duties re-quired of him? Nothing is said in the will as to what the execu-tor was to do with the share of Milly West. The twelfth of the

estate was given to her to her sole and separate use, without any limitation over, and the executor had no more control over it than over any other distributive share.

In order to give a separate estate to the wife a trustee is not necessary.—2 Story Eq. Jur., § 1380; Harp. Eq., 243; 9 Ves., 583.

The law will regard the husband as trustee of the wife's separate estate.—2 Hill, 200; 9 Ves., 583; 3 Brown's Ch. Rep., 383.

The executor should have paid the share of Milly West to her and taken her receipt for the same.—2 Story Eq. Jur., § 1303; 2 Wms. on Exs., 1275, 1280.

The only trust in this case was to settle the estate, determine the shares and pay them out to the legatees. Not having done this as to Milly West, the executor is responsible.—2 Wms. on Exs., 1630, 1670, *et passim*.

Allowing that the executor was trustee, he had no right to change character of the estate.—2 Story Eq. Jur., § 978.

The appellant must show express authority under the will to hold and invest funds, or an absolute necessity from the circumstances of the case that such a trust should be implied. There being no necessity for him to act as trustee further than to pay Milly West her share of the estate, no trust to hold and invest funds will be implied.—Story Eq. Jur., title "Implied Trusts."

Since the duty of the appellant was to pay over to Milly West (or her husband for her use, taking from him sufficient security that the money would be properly applied,) her share of the estate, he was guilty of a breach of trust and a *devastavit* when he, as he asserts, invested the same in worthless bonds. There was no limitation over as to Milly West's share; the property was hers in fee simple, and no other interests than hers called for protection. The purposes of the testatrix's bounty were defeated by the so-called trust in the hands of the executor, and more particularly so when, as the appellant alleges, the husband of the legatee was an "insolvent and thriftless man." It must be presumed that the testatrix intended the money for the benefit of Milly West, as she made no limitations over after her estate, and not that it should be held by the executor or invested in worthless bonds while the legatee was, as appears from the evidence, in great want of money with which to purchase the necessaries of life and constantly applying to the executor for her share of the estate.

June 15, 1877.   The opinion of the Court was delivered by

WILLARD, A. J.   The plaintiff, E. West, as administrator of Milly West, deceased, claims of the executor of R. Truesdel the amount of a legacy left to Milly West by the will of such testator. The legacy was as follows :   "And a twelfth to my daughter, Milly West.   This one-twelfth of my estate I give to my daughter, Milly West, for her sole and separate use, and it is not to be subjected to the debts or contracts of any person else."   Milly West was, at the time of this legacy, a married woman, and so remained until her death.   The estate that came into the hands of the executor sub-ject to the payment of this legacy consisted of Confederate cur-rency.   It is not alleged or shown that the executor was at fault in receiving such currency, and he must be held, for the purposes of this suit, to have rightfully possessed himself of such currency as proper assets of his testator's estate.   It is contended that it was the duty of the executor to have paid Milly West's proportion of this fund into her hands, or into those of her husband, and that the subsequent loss of the estate is chargeable to neglect of this duty.   The decree of the Probate Court so holds, and that decree has been affirmed by the Circuit Court.

It is very clear that the terms of the legacy imported the crea-tion of a trust fund, for, without the intervention of a trustee, the purpose of the testator could not be effectively accomplished.   As the will did not designate a trustee, nor provide the means of his appointment, it was necessary, before the fund could be paid out by the executor, that a trustee should be appointed by legal authority.   No such appointment was made.   It is contended that the plaintiff, who was the husband of Milly West, was entitled to assume the authority of trustee and to receive the fund in question. He could not exercise the rights of a trustee without appointment by competent authority, nor could he have been properly appointed trustee of his wife's estate under this legacy.

One of the clear objects of the special provisions of this legacy was to protect such legacy against the marital rights of the plaintiff as husband of Milly West, and it is inconsistent with such an intent that the fund should be subjected to the control of the plaintiff. Without appointment and security, a payment to the plaintiff during the lifetime of Milly West would have been a breach of duty on the part of the executor.

West *vs.* Cauthen.

The foregoing propositions are fully established by *Robinson* vs. *Dart*, (Dud. Eq., 130,) and again in *Dunn* vs. *Dunn*, (1 S. C., 350). It is equally clear from these authorities that the receipt of Milly West herself for the *corpus* of the legacy would have afforded no protection to the executor. It is evident that the decree below was erroneous in this respect.

It appears that the executor converted the Confederate currency in his hands belonging to the estate of his testator into interest-bearing Confederate bonds. The decision of this Court in *Hinton* vs. *Kennedy* (3 S. C., 459,) was in a case precisely parallel to the present one as it regards the claim under consideration. In accordance with that case, we must hold that the executor was guilty of no breach of trust in such change of securities. It fully appears that the entire estate subject to the payment of the legacy to Milly West was lost through the depreciation of Confederate securities.

As it is not made to appear that the executor was at fault in retaining in his hands such securities down to the time when, by the course of public events, they became valueless, there is no ground for maintaining the complaint.

The decrees of the Circuit and Probate Courts must be set aside and the complaint dismissed.

*McIver*, A. J., concurred.